Here's the next case, United States v. Hilliard. May it please the court, my name is James DeVita. I represented appellant Roisin Hilliard in the district court along with my colleague Benjamin Zeman. Roisin Hilliard was charged in a one count indictment with conspiracy to possess and distribute a kilogram or more of heroin. He was acquitted of that charge. This court has held in the Gonzalez case, United States v. Gonzalez, that the quantity and type of drug contained in the alleged indictment... He was convicted of a... Lesser included offense, Your Honor. But he was acquitted of the charge in the indictment. B1A charge, right? B1A. He was convicted of a B1B. B1A, as Your Honor knows, has a 10 year mandatory minimum. B1B has a 5 year mandatory minimum. So there's a significant difference. And there's also a significant difference with regard to the quantity. B1B requires 100 grams or more. And B1A requires a kilogram or more. So the defendant had no opportunity, was offered no opportunity to plead to the lesser included charge prior to the trial. Now, I did not represent Mr. Hilliard for approximately the first year of the case against him. But once I became assigned, when I was assigned, I explored the possibility whether the government would be willing to consider a plea to the lesser charge. And the government was unwilling to do so. So Mr. Hilliard was forced to go to trial by the government in order to establish that he was not guilty of the charge in the indictment. But did he concede the fact of leadership? And did he concede the amount? During trial, he kept arguing 20, and there was a finding of 100. So if the issue, I mean, I'm troubled by what the government allowed or did not allow. But does it matter, given that he did not at any stage concede two very important issues? Well, Your Honor, the issue of acceptance of responsibility and the district court's determination in this case was influenced by a mistaken view of the law. And that is a procedural error in the sentencing that requires reversal. The court specifically said at sentencing that he was not acquitted and that he was convicted as charged. Now, your question is whether there was a debate at the trial over the exact quantity, and the answer is yes. But the argument, I think, Your Honor — And his leadership. Well, Your Honor, the issue of leadership was not an issue at trial. It was an issue at sentencing, and we did contest that. But in terms of the discretion of a district court in whether somebody has accepted responsibility is quite broad, and it includes matters that may be relevant to sentencing, doesn't it? Yes, Your Honor. But the issue here is whether the court made a procedural structural error that is per se reversible. And that's the Rodriguez case says that if the decision not to grant the departure is influenced by a mistaken view of the law, then it must be reversed and remanded for resentencing. And here it's explicit in Judge Bracetti's sentencing discussion that he was under the — he made the mistaken statement that the defendant was not acquitted because, in fact, he was acquitted of the charge contained in the indictment. Albeit, yes, he was convicted of a lesser-included charge, but — Most people would not view that as an acquittal. So you don't come out of the room, the courtroom, saying I got acquitted. Well, Your Honor, I can tell you two things. The ordinary — so I think that Judge — look, you're cutting it a little too finely. So when Judge Bracetti said he was not acquitted, he was right in one sense. Well, Your Honor, the case law is clear that an element of the charge against Mr. Hilliard in the indictment was a kilogram or more of cocaine. The government did not prove that. The jury found the government did not prove that. Therefore, he was acquitted of that charge. He was convicted of a lesser-included charge. But in terms of coming out of the courtroom and saying you were — I was convicted of a five-year mandatory minimum, it's a lot better than being convicted of a ten-year mandatory minimum. Let me answer that. And it's — and it's — All right. So is there a single decision in your favor on this point? Well, Your Honor, I would argue that the Passione decision — it's a district court decision, I believe it was Judge Knapp, where a defendant went to trial, was charged in a RICO indictment with the mail fraud being the RICO predicates. He was acquitted of the RICO and the RICO conspiracy, convicted of the mail fraud charge. And he was given credit at the sentencing for acceptance of responsibility. So I would say that that's a decision in our favor. There's also a decision in the — I believe it's the Eighth Circuit — no, I'm not sure of that. It's cited in my brief, the Guerrero case, where a defendant offered to plead guilty to two — to admit to two kilograms of cocaine, which would have put him in a B — one B category. The government refused and compelled him to go to trial. And then he was convicted, but this was prior to Apprendi and Booker, and therefore it was the judge that was making the fact findings. The judge found that the evidence supported only the two kilograms and not the five kilograms, and gave the defendant credit for acceptance of responsibility in that case. Did Judge Brissetti say that he was acquitted, that he was convicted of the charge on which he was acquitted, or did he just say that he was convicted? He said he was convicted. He did not — Of something. I'm sorry, Your Honor? Of something. Well, it was — it's ambiguous, Your Honor. Well, I know, but you say this is such error that we have to reverse. If it's ambiguous, why isn't it sensible to assume that the judge said what happened, that he was convicted? Well, because he does say — he does say that you carried — he said the government carried its burden of proof. The government did not carry its burden of proof to a key element. On one charge, but they did in another. Well, Your Honor, I would submit that the — that's a distinction without a difference and that the error is in not, as the district court did not and the government does not, giving fair credit to the fact that he was acquitted. There was an acquittal. And 3E1.1 specifically says that even if a defendant exercises his constitutional right to trial, he may still be entitled to acceptance of responsibility credit. Did your client, through defense counsel or otherwise, admit or concede that he was at least liable for 100 grams or more? Yes, Your Honor. In the pre-sentence investigation, we argued for a guideline range of 100 to 400 grams — 100 to 700 grams. No, no, prior to trial. Not prior to trial. There was no opportunity, Your Honor. Or at trial. I'm sorry? Or at trial. No, there was no concession regarding the specific amount. What was conceded in the opening was that he had — he had sold drugs and that contested that he was guilty of the conspiracy that was charged in the indictment. That was the — But he also, presumably then, disputed the B-1B charge. Your Honor — As a lesser-included — We argued — we argued that the specific evidence the government was relying on was insufficient to establish the 100. But I — to say that he specifically argued against the B-1B is probably a little more than I would concede on that. Let me — let me — if I could ask you about the Montero purchases and the evidence of the Montero purchases. Yes, Your Honor. Isn't it — isn't it true that — that you had notice of the government's intention to introduce evidence of the Montero purchases before trial and that it was the subject to motion practice? That's an interesting question, Your Honor. The answer is yes, I was aware of the evidence. I moved to exclude it pre-trial. But we — to say that it was — we were on notice, that was a little late in the day. We were given a large amount of discovery. The defendant — the defense counsel prior to me moved for a bill of particulars. That motion was denied. So there was no opportunity for us to say, here are — this is the parameter of the conspiracy with which he is — the government is charging him. And it wasn't explained in the bill. But Bortnowski, this Court's landmark case on bill of particulars, says that just providing a massive amount of evidence, and the evidence in this case was massive, and expecting the defense to — to leaf through that is asking too much. I will tell you that I have not seen a bill of particulars probably since Bortnowski. And I've been around a few years, Your Honor. So it's — for some reason, the district court — and I don't mean Judge Brisetti in particular, but the Southern District seems to have abandoned the practice of allowing bills of particulars. Particular — particularly in complex narcotics cases. And as a consequence, this is the type of thing that can result. But even so, I take your — your point. There — there was apparently substantial evidence connecting Hilliard to the Montero purchases, weren't there? Montero testified at trial that — that Hilliard supplied him with the heroin that was used in the Montero purchases. And that testimony was corroborated, was it not, by wiretap evidence and testimony of law enforcement agents? I would say that the — Montero's testimony — if the jury had believed Montero, I believe Mr. Hilliard would have been convicted of the B1A. Montero was a very, very suspect witness. He pled guilty to lying to the government in his initial proffers, and in fact, lying about Mr. Hilliard. And the — his testimony, I would submit, is — is not corroborated on this particular subject by the wiretap evidence because Mr. Hilliard was never intercepted on the wiretap of — conversations were never intercepted on the wiretap of Mr. Montero. That doesn't answer Judge — Chief Judge Katzman's question, I think. Well, I think the question was whether his testimony was corroborated by the wiretap evidence. And I think that the answer to that is not really. I think that the — there was one surveillance where the surveillance officer saw Mr. — testified that he saw Mr. Hilliard going into Mr. Montero's house. But that, apart from Montero's testimony, that doesn't connect him to those individual purchases that were offered in evidence. Thank you. Thank you, Your Honor. May it please the Court, my name is Jillian Grossman, and I'm an assistant United States attorney in the Southern District of New York. I represent the United States on this appeal, and I represented the government at trial. The Court should affirm Hilliard's conviction and the sentence imposed by the district court. The district court did not commit clear error in finding that Hilliard had not clearly accepted responsibility for his offense. Hilliard's sole purpose in going to trial in this case was to contest his factual guilt. He never clearly accepted responsibility. But if the government had let him plead guilty to the lesser-included offense, which it clearly did not, how do we know that he would not, under those circumstances, have admitted to more? That is, the thing that troubles me about this case is not that whether he admitted to everything. He didn't. But whether, if the government had done what, plausibly, it should have done, he then would have. And how are we to deal with that situation? Your Honor, the answer to that question is that it is the defendant's burden to make the desired plea offer. So in this case, Hilliard had ample opportunity before trial to put on the record at any of the numerous court appearances that he would have been willing to plead to the offense of conviction had the government made that offer. And so it was the defendant's responsibility to establish that he would have been willing to accept responsibility. And he took no steps whatsoever before the court. Am I right that he, in fact, disputed the B-1B amount, or is that wrong? That is absolutely correct, Your Honor. He disputed both the conspiratorial agreement itself and the quantity. The defendant argued in summation in this case that the government's evidence at most established 20 grams of heroin, which the B-1C. That's correct, the B-1C. At no point, either before trial or during trial, did the defendant clearly accept responsibility for the offense of conviction. And at no point after trial did he do so. The defendant refused to discuss his offense conduct with probation. And at sentencing in this matter, he disputed multiple of the district court's factual findings, including the district court's finding. Is there an opinion? I mean, this didn't occur to me until something, until Mr. DeVita said something. Is there an opinion from this circuit on the applicability of acceptance of responsibility in this situation? That is, where a defendant is convicted of the lesser included offense after trial. I am not aware of an opinion from this circuit, Your Honor. I am aware of an opinion, United States v. Guerrero-Cortez, from the Eighth Circuit. That's the one that Mr. DeVita. That is correct. And the circumstances in that case are very different from the circumstances here. But I'm not aware of a Second Circuit decision that squarely addresses this particular issue. It makes sense, but there's no, and maybe that's why there's no opinion, but there's no opinion. Not that I'm aware of, Your Honor. I'm assuming from the Southern District of New York, that means there's no opinion. I do believe my research was exhaustive, yes. I would like to briefly address the question of whether the defendant had ample notice regarding the evidence of the controlled purchases of heroin. There is no question that the defendant had abundant notice of exactly how that evidence related to the charged conspiracy. How many weeks? Over a year. That evidence was disclosed over a year before trial. Three weeks before trial, the government produced Jenks Act material where the witnesses addressed, explaining, you know, the connection between the evidence and the charged conspiracy. Also, three weeks before trial, the government turned over marked exhibits regarding that evidence, which were also the subject of a stipulation with defense counsel. There was also a 15-page complaint in this case, much of which discussed Montero's role in the conspiracy, and the indictment itself alleged Montero was a co-conspirator. It referred to him as CC1. It didn't refer to him by name, but it referred to him as in, yeah. Yes, Your Honor. It referred to him as CC1. So the claim is that, as I understand, there were only four buys that were the subject of the indictment, or is it the subject of the grand jury presentation? The defendant's claim is limited to the grand jury presentation. The indictment includes four overt acts, and two of those overt acts explicitly involve Montero, who is referenced as CC1. And so the indictment did charge overt acts involving Montero. And in the grand jury, the government's witness did, in fact, testify extensively about Montero's role in the conspiracy, although this court has never looked to the content of a grand jury proceeding in a constructive amendment or prejudicial variance inquiry. It has always looked to the indictment, not to the grand jury. Yeah. Exactly, Your Honor. Yes, you've always compared the language of the indictment to the evidence at trial and the jury instructions. What do we make of Montero's false statements and the Montero purchases at issue here? Your Honor, put simply, those false statements have no bearing on any of the questions before the court. Montero pled guilty to making false statements to the government. Those false statements had nothing to do with the controlled purchases at issue. And he took responsibility. The government elicited the facts underlying that conviction during his direct examination, and the defendant had every opportunity to cross-examine Montero about those false statements. To the extent the defendant wished to argue that those false statements cast any doubt on the validity of the evidence regarding the controlled purchases, and again, I reiterate, the false statements themselves did not pertain to the controlled purchases. But in any event, the defendant had every opportunity to make those arguments at cross-examination and summation. And those arguments go to the weight of the evidence. Is it right that if the jury, and you may not be able to answer this perfectly, but I'd like your assessment, that if the jury had fully believed Mr. Montero, they would have convicted or should have convicted him on the B1A charge? Absolutely. Given the amounts. Absolutely not, Your Honor. That is pure speculation. We can't know why the jury did not find that the government had carried its burden beyond a reasonable doubt on the B1A. But the government's second cooperating witness, Antonina Anzalone, her testimony alone would also have supported a finding of B1A. And so it can't be the – it is not necessarily that the government disregarded Juan Montero's testimony, because if they had done so, they also would have disregarded – I mean, Antonina Anzalone's testimony alone supported a B1A finding. And they did convict Hilliard of the conspiracy charge in the indictment, albeit involving a lower quantity. And so it's highly unlikely that they did not credit one or both of the cooperators. And we simply – we simply don't know the details of their reasoning. We don't know why the jury did what it did, as is often the case. I mean, they may have believed him in part. I mean, the jury. Exactly, Your Honor. They may have credited part of his testimony or not all or done some version of that for every witness. If the Court has no further questions, the government will rest on its submission. Thank you. Thank you. I'd like to respond to one particular thing that Ms. Grossman said, and that is that Mr. Hilliard disputed the conspiratorial agreement. That is not correct, because at no point did we argue that there was no conspiracy at all. The evidence, frankly, was overwhelming that there was, and it would not have been credible. So we obviously did dispute the amount. And as far as the verdict was concerned, we were successful in disputing it in part. Your Honor asked whether – Judge Loyer, you asked whether there is any decision in this circuit reversing for not giving credit. We're just tied really either way. Well, there is actually – and I will – I have to bring it to Your Honor's attention. The United States against Borea, I happen to represent the appellant in that case as well, where this Court affirmed the denial of – actually, it was a partial acceptance of responsibility. In that case, Judge Seibel gave – it's cited in my reply brief, Your Honor, came down in between the two. And Judge Seibel gave the defendant in that case one point for acceptance of responsibility, not the two points. And the difference was there was both a substantive count and a conspiracy count, and we did argue at trial against the existence of any conspiracy, whereas here we did not. That's categorically different.  That's my point, Your Honor. And that is the only case I'm aware of – and I may not have been as thorough as Ms. Grossman, but I've tried to be thorough – in this circuit involving a case going either way on this issue. Yeah. On the acceptance of responsibility point and the acceptance of responsibility in a statement in the PSR, don't you say that for the first time in your reply brief? I'm not sure which – is it the – it may be the first time that I pointed to that because it was responding to the government saying that he never accepted responsibility. But it's clear in the pre-sentence process that we did admit to the 100 grams and asked for a sentence between 100 and 400 grams. The statement in the opening was in both briefs. Thank you. Thank you, Your Honor. Thank you both for your arguments. The Court will reserve decision.